Dear Mr. Hilzim:
You have requested an opinion of the Attorney General regarding the classification and disposition of profits realized from a conference jointly sponsored by the Louisiana Travel Promotion Association (Association) and the Louisiana Office of Tourism (LOT).
LOT is almost totally funded from sales tax revenues generated by the Louisiana Tourism Promotion District (District). R.S. 51:1282
constitutes the District as a political subdivision of the state. R.S. 51:1286 authorizes the District to levy and collect a sales and use tax not to exceed three one hundredths of one percent. Once collected, the tax proceeds are deposited into a special fund maintained by the State Treasurer.
Effective, July 1, 1993, proceeds of the tax collected in excess of twelve million dollars, annually, are transferred to the state general fund to assist the state in the reduction and elimination of its cash flow deficits, general fund operating deficits and for other state general fund purposes. R.S. 51:1286(C)(3).
You state that in the years 1991 through 1993, LOT and the Association jointly sponsored a conference which replaced two separate functions held individually by LOT and the Association. A steering committee comprised of members representing both LOT and the Association was formed to host the conference which was called the Louisiana Travel and Tourism Summit (Summit).
The joint sponsorship was terminated by the Association after the 1993 Summit. The Association calculated half of the profits remaining in the Summit account at the time of the termination of the joint sponsorship at $14,438.68. In January, 1993, the Association attempted to return these profits to LOT. At that time, LOT determined that it was not entitled to the funds and suggested that they be paid directly to Peter Mayer and Associates, LOT's advertising contractor, to help defray the cost associated with another project — the African-American Site Identification project. The Association followed this suggestion.
It was LOT's position that the profits constituted funds that were privately held and generated. LOT had made no monetary investment in the Summit, other than paying the cost of registration fees for its employees. Also, there was never a formal contractual or cooperative endeavor agreement between LOT and the Association.
The Inspector General takes the position that the surplus profits constitute public funds which should have been returned to the State Treasurer. In support of his position, the Inspector General notes that the Summit was jointly sponsored with LOT and that LOT officials participated in the creation and management of the Summit. In addition, the Deputy Assistant Secretary of CRT coordinated with the Association and co-signed all Summit checks, including the check representing the payment that is at issue. Finally, according to the minutes of an April 27, 1990 meeting of the Summit steering committee, it was unanimously agreed and resolved that "any revenues or deficits resulting would be split equally between the State Office of Tourism and LTPA [the Association]." These minutes reflect that three CRT officials — the Secretary, an Assistant Secretary and a Deputy Assistant Secretary — were present and concurred in this action.
You ask whether these funds constitute public or private funds and, if public, should they have been returned to the Treasurer or the District.
The funds, in question, are obviously excess revenues over expenditures generated from registration fees relating to the Summit, some of which could be attributable to LOT attendees. Further, the source of the registration fees paid by LOT are the tax receipts generated by the District. This office has previously noted that the term "state money" (i.e., public funds) includes funds collected or earned through taxes, licenses, fees and other revenues and financial transactions of the state and its agencies, boards or commissions. Money that is directly or indirectly generated by "state money" is also "state money". Attorney General Opinion No. 74-1807.
Considering the factors discussed above — i.e., that the Summit was jointly sponsored and managed by LOT, that CRT officials co-signed all checks for Summit expenses, that registration fees comprising the surplus funds constituted tax receipts and that steering committee minutes reflect that one-half of all profits shall be remitted to LOT — it is the opinion of this office that the funds in question constitute state and/or public funds.
With regard to the manner of their disposition, representatives of the State Treasure's Office recommend that the check should have been deposited into LOT's revenue account. LOT should then have issued a check to the Treasurer which would have been deposited in the District's special fund. We concur in this recommendation.
Should you have any additional questions concerning this matter, please do not hesitate to contact me.
With kindest regards, I am
 Yours very truly, RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ______________________________ ROBERT E. HARROUN, III Assistant Attorney General
RPI/ROB3/gbe
cc: Bill Lynch, Inspector General
Mr. Mark H. Hilzim Secretary Louisiana Department of Culture, Recreation and Tourism P.O. Box 94361 Baton Rouge, La 70804-9361
Date Received: Date Released:
Robert E. Harroun, III Assistant Attorney General